JOHN CLEARY *vs.* MICHAEL A. CAVANAUGH & others.

Bristol.     October 27, 1914. — November 24, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Negligence,* In maintenance of freight elevator, *Res ipsa loquitur. Elevator. Practice, Civil,* Conduct of trial.

The fact, that a freight elevator in a livery stable fell from some unexplained cause when it was in ordinary use transporting bales of hay, is in itself evidence of negligence on the part of the person whose duty it was to maintain the elevator toward the person in charge of delivering the hay who was invited to use the elevator for that purpose.

In an action against the proprietor of a livery stable for personal injuries caused
by the fall of a freight elevator in the stable, when the plaintiff was upon it
in charge of some bales of hay that were being delivered to the defendant, if
the plaintiff introduces evidence tending to show that the cable of the elevator
broke because it had rusted out and that no inspection of it had been made
for two years and nine months before the accident, but does not attempt to
explain why the safety device of the elevator failed to work, the jury can find
either that the accident happened by reason of the rusting out of the cable
which the defendant negligently failed to replace or repair, or, if they are not
convinced of this, they can find upon the doctrine of *res ipsa loquitur* that
the unexplained falling of the elevator while in ordinary use was in itself evi-
dence of the defendant's negligence.

In an action for personal injuries caused by the falling of a freight elevator in the
defendant's livery stable when the plaintiff was using the elevator by the de-
fendant's invitation, a plumber, who repaired elevators, testified as a wit-
ness for the plaintiff that he had examined this elevator within twelve hours
after the accident for the purpose of repairing it. He was permitted by the
presiding judge to describe the condition of the elevator, subject to the require-
ment that the plaintiff afterwards should show that there had been no change
in its condition between the time of the accident and the time when the ele-
vator was examined by the witness. Later in the trial the defendant's fore-
man, who was in charge of the stable at the time of the accident, when called
by the plaintiff as a witness, testified that on the day of the accident, after it
had happened, he went to see the plumber and asked him to come over to the
stable, and then added, "There had been no change in the elevator, that I
know of, from the time it fell until he came over." On cross-examination he
testified that he was not there all the time from the time the elevator dropped
until the plumber came over and would not be able to say of his own knowl-
edge whether there had been a change or not. The defendant then asked the
judge to strike out the testimony of the plumber as to the condition of the
elevator. The judge refused to do this. *Held*, that the judge's refusal to
strike out the testimony afforded the defendant no ground for exception, as
the jury could find on the testimony of the foreman, in spite of what he said
on his cross-examination, that there had been no change in the condition of
the elevator.

TORT for personal injuries sustained by the plaintiff on Janu-
ary 13, 1911, by reason of the falling of a freight elevator in
the livery stable of the defendants at Taunton, when the plain-
tiff, who was a teamster in the employ of the Taunton Teaming
Company, was upon the elevator in charge of some bales of hay
that were being delivered to the defendants by his employer.
Writ dated July 22, 1911.

In the Superior Court the case was tried before *Hall*, J. The
facts material to the points decided which could have been found
upon the evidence are stated in the opinion. Bills, there men-
tioned, was the foreman of the stable. Wilbur, there mentioned,

was one of two men in the employ of the Taunton Teaming Company who were assisting the plaintiff in delivering the bales of hay. The judge refused to order a verdict for the defendants and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $750. The defendants alleged exceptions, raising the questions that are stated in the opinion.

*F. J. Smith,* for the defendants.

*W. S. Woods,* for the plaintiff.

LORING, J. 1. The jury were warranted in finding that the defendants had invited the plaintiff to use the elevator as he was using it at the time of the accident. There was evidence that he had been delivering hay at the stable for several years; that on earlier occasions he had ridden on the elevator in the same way when (as we construe the bill of exceptions) either one of the defendants, or Bills, was standing on the floor at the time and did not object. One of the defendants testified that Bills was in charge of the stable in the absence of the defendants. In addition there was evidence that on the occasion in question, when the plaintiff and Wilbur were going up on the elevator with the hay, Wilbur said to Bills, "All right ain't it, Bills?" and Bills said, "Yes; go ahead."

2. The jury were warranted in finding that the falling of the elevator was caused by the negligence of the defendants. They could have found that the elevator fell when subjected to ordinary use. That fact of itself brought the case within the rule of *res ipsa loquitur,* as to which see *Minihan* v. *Boston Elevated Railway,* 197 Mass. 367. For cases somewhat like the case at bar, see *White* v. *Boston & Albany Railroad,* 144 Mass. 404; *Minihan* v. *Boston Elevated Railway, ubi supra; Sullivan* v. *Reed Foundry Co.* 207 Mass. 280. The plaintiff however went further and undertook to show that the cable broke because it had rusted out, and that no inspection of it had been made for two years and nine months before the accident. So far as the cables were concerned a case of negligence was made out in both ways; and the plaintiff had a right to rely on the doctrine of *res ipsa loquitur* if the jury thought that he was unsuccessful in making out the case of specific negligence which he undertook to make out. *Golden* v. *Mannex,* 214 Mass. 502. The plaintiff however did not undertake to make out a case of specific

negligence as to why the safety device (which on the plaintiff's evidence appeared to have been a part of the elevator) did not work at the time of the accident. Indeed there is nothing in the bill of exceptions which shows how this safety device was constructed, or how it was intended to work. All that appears in the bill of exceptions is that there was a safety device; that it was seen in August next before the accident (which happened in January), by the plumber, who testified that he was the only person in Taunton who repaired elevators. The plumber (who was a witness called by the plaintiff) testified that he did not repair the safety device in August when he saw it, but that he saw it then and it was working all right at that time. He also testified that when he examined the elevator after the accident, so far as he could see the safety device was "solid." In the case at bar there was no attempt so far as the safety device was concerned to explain the happening of the accident. So far as the safety device was concerned the plaintiff had a right to rely on *res ipsa loquitur.*

3. There can be no question as to the jury's being warranted in finding that the plaintiff was in the exercise of due care. There was evidence that the elevator was an ordinary freight elevator, operated by two cables; that the plaintiff had used it successfully more or less for several years before the accident; and that it was not overloaded at the time here in question. On these points there was conflict in the testimony, but on the evidence these findings were warranted.

4. The exception to the refusal to strike out the testimony of the plumber as to the condition of the elevator when he examined it within twelve hours after the accident for the purpose of repairing it must be overruled. The plumber's testimony originally was admitted on condition that the plaintiff afterwards should show that there had been no change in the condition of the premises between the time of the accident and the time when the elevator was examined by the plumber. Later the defendants' foreman, Bills, already referred to, when recalled to the witness stand by the plaintiff, after testifying that on the day of the accident, and after it happened, he went to see the plumber and asked him to come over to the stable, added: "There had been no change in the elevator, that I know of, from the time

it fell until he came over." This was sufficient to justify a finding that there had been no change in the condition of the elevator. And that finding could be made although Bills on cross-examination testified that he was not there all the time from the time the elevator dropped until the plumber came over and would not be able to say of his own knowledge whether there had been a change or not. See *Tierney* v. *Boston Elevated Railway*, 216 Mass. 283; *Sousa* v. *Irome, ante*, 273.

*Exceptions overruled.*