347 P.2d 702

Louis J. NIEMAN and Mabel Nieman, husband and wife, Appellants,

v.

Harry L. JACOBS, Ancillary Executor of the Estate of B. Goodman dba Santa Rita Hotel, Appellee.

No. 6463.

Supreme Court of Arizona.

Dec. 16, 1959.

Conner & Jones by James M. Murphy, Tucson, for appellants.

McCarty, Chandler & Udall, Tucson, for appellee.

JOHNSON, Justice.

The plaintiff-appellants sued for damages for personal injuries sustained by Mabel Nieman as a result of the alleged negligence and carelessness of the defendant-appellee in the operation of a passenger elevator located in the Santa Rita Hotel in Tucson, Arizona. The action was tried before a jury and upon the conclusion of the plaintiff's case, on motion of the defendant, the court directed a verdict in favor of the defendant. This appeal follows. Briefly, the facts the jury might have found are these:

The plaintiffs were descending with others from the fifth floor to the main floor of the defendant's hotel in an elevator operated by one of the defendant's employees. The elevator slipped past the main floor, about two feet, and the operator was unable to raise it level with the floor of the building. The operator was able, however, to open the elevator door and she is reported to have said, "it is stuck again. You will have to step up." There was a good light in the elevator and the light in the lobby or main floor was good. The position of the elevator was obvious, as was the fact that the door space in the elevator was diminished. The plaintiff, Mrs. Nieman, at first refused to leave the elevator stating that she did not want to ruin her stockings. Thereafter, the elevator operator left the car stating that she would go get either the manager or the bell captain. Mrs. Nieman watched both the operator and another passenger stoop over and go through the door. One of the passengers climbed out and then reached down and took Mrs. Nieman's hand to assist her out of the elevator; she placed one foot on the floor above, gave her hand to the man who preceded her and as she thus attempted to leave the car, her head struck the top of the door frame of the elevator, giving rise to the injury complained of herein.

Plaintiffs have made only one assignment of error, as follows:

"The lower court erred in directing a verdict in favor of the defendant and against the plaintiffs in refusing to grant a new trial herein, for the reason that the evidence conclusively showed that the plaintiffs were entitled to have this case go to the jury inasmuch as the defendant violated a duty owed to the plaintiffs by negligently operating a passenger elevator in violation of the high degree of care required to avoid injury to passengers riding therein."

Actually, the only issue for this Court to determine is whether the plaintiffs have produced evidence legally sufficient to sustain a verdict based on the alleged negligence of the defendant. Lazear v. Pendergrass, 39 Ariz. 111, 4 P.2d 386 and Nichols

v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201. In considering this question, we must take the evidence as strongly as is reasonably possible in favor of the plaintiffs. Keeler v. Maricopa Tractor Co., 59 Ariz. 94, 123 P.2d 166 and Nichols v. City of Phoenix, supra. We must determine whether under any theory of the case plaintiffs were entitled to have their cause go to the jury.

Absent the special evidentiary rule of res ipsa loquitur, a plaintiff in a negligence action, in order to withstand a motion for directed verdict at the close of its case, must make out a prima facie case of actionable negligence; to-wit, plaintiff must show the existence of a duty owed by defendant to plaintiff, a breach of that duty, and an injury proximately caused by such breach. Dungan v. Brandenberg, 72 Ariz. 47, 230 P.2d 518; Krysiak v. Acme Wire Co., D.C.N.D.Ohio 1959, 169 F.Supp. 576. Assuming the duty owed plaintiffs by defendant in the instant case, there is no evidence in the record specifying the particular manner in which defendant breached that duty. Plaintiffs offered no proof of the particulars of defendant's alleged negligence. Rafferty v. Northern Utilities Co., 73 Wyo. 287, 278 P.2d 605; Krysiak v. Acme Wire Co., supra. By their evidence produced in the course of the trial, plaintiffs established little more than that the elevator in fact did not operate properly and that Mrs. Nieman sustained injury while attempting to leave it. The situation, therefore, falls squarely under the rule that negligence may not be presumed from the mere fact that an accident has occurred or that an injury has been sustained, Hoskins v. Hoskins, Ky., 316 S.W.2d 368; In re Mueller's Estate, 166 Neb. 376, 89 N.W.2d 137; Sheptur v. Procter & Gamble Distributing Co., 6 Cir., 1958, 261 F.2d 221; Parras v. Standard Oil Co., 160 Ohio St. 315, 116 N.E.2d 300, nor from mechanical failure alone, Rodin v. American Can Co., 133 Cal.App.2d 524, 284 P.2d 530; Rafferty v. Northern Utilities Co., supra. If we go on to assume, however, that defendant was negligent, we must at the same time hold that plaintiffs failed to establish a prima facie case of actionable negligence. Krysiak v. Acme Wire Co., supra.

We will next consider whether plaintiffs are entitled to the benefit of the doctrine of res ipsa loquitur. The evidentiary function of the doctrine and its effect upon an attempt to direct a verdict in favor of the defendant at the close of a plaintiff's case has been described in prior decisions by this Court:

"The fact that the plaintiff may, in a proper case, rely on this rule does not mean, however, that he is excused from proving negligence, for there is no exception to the rule that one seeking damages for an injury caused thereby must establish that negligence by a

preponderance of the evidence. It is true the purpose of the rule of res ipsa loquitur is to aid the plaintiff in a proper case in making this showing by supplying sufficient proof of negligence to require a defendant claiming that the accident did not occur through any fault of his to produce evidence to show this and take the case to the jury."

Stewart v. Crystal Coca-Cola Bottling Co., 50 Ariz. 60, 64, 68 P.2d 952, 954; Sawyer v. People's Freight Lines, Inc., 42 Ariz. 145, 22 P.2d 1080. The doctrine, therefore, if applicable, would compel us to remand for a new trial.

Briefly stated, the requirements of res ipsa loquitur are these: the thing which causes the injury must be under the exclusive control of the defendant; the injured person must be without fault; and the injury must be such as in the ordinary course of things does not occur if one having such control uses proper care. Jesionowski v. Boston & Maine R. R., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416; Phen v. All American Bus Lines, Inc., 56 Ariz. 567, 110 P.2d 227; Rodin v. American Can Co., supra; Weigand v. Pennsylvania R. Co., D.C.W.D. Pa.1958, 166 F.Supp. 843, reversed on other grounds 3 Cir., 1959, 267 F.2d 281; Mecum v. Food Machinery & Chemical Corp., W. Va., 103 S.E.2d 897. At this point, returning to the facts of the present case, we note that Mrs. Nieman was injured not by the fall of the elevator, but in her attempt to leave it. A jury under such facts might well determine that this injury was the proximate result of negligence attributable to defendant; on the other hand, it might equally as well determine that the condition confronting Mrs. Nieman was obvious and that, therefore, any injuries suffered by her were the result of her own negligence. Lewis v. Duquesne Inclined Plane Co., 346 Pa. 43, 28 A.2d 925. While we express no opinion on the merits of these two possibilities we must note that "if * * *· there are two concurring causes of the accident * * * and there is no evidence it was any more likely that the injury was caused by the negligence of defendant· than by that of the stranger, the rule (of res ipsa loquitur) does not apply." Phen v. All American Bus Lines, Inc., supra [56 Ariz. 567, 110 P.2d 228]. This statement is nothing more than a reiteration of· the rule that the doctrine of res ipsa loquitur does not apply where the facts shown are equally consistent with the hypothesis that the injury sued for was caused by negligence of either party or of both combined. Cosden v. Wright, 202 Okl. 211, 211 P.2d 523; Estes v. Estes, Mo.App., 127 S.W.2d 78; Shaughnessy v. Boston & M. R. R., 222 Mass. 334, 110 N.E. 962. "Where an injury may have occurred in more than one way, neither the court nor the jury may presume that it happened in the manner which would give rise to liability. Said in another way, the proximate cause of

an injury must be established by the one seeking to recover therefor; and where two or more reasonable inferences may be drawn from established facts, it cannot be presumed that the injury occurred in the manner which would give rise to liability." Kletrovetz v. Grant Hospital, 105 Ohio App. 236, 152 N.E.2d 149, 151. See also, Simmons v. F. W. Woolworth Co., 163 Cal.App.2d 709, 329 P.2d 999.

It is thus readily apparent that the presence of a proximate cause issue is the reason underlying the rule that res ipsa loquitur will not be invoked where the facts infer that a plaintiff's injuries may have been caused by its own conduct. With regard to the requirement of proof of proximate cause, we cite with approval the following passage from the recent case of Cook v. United States, D.C.M.D.Ala. 1958, 163 F.Supp. 784, 786:

"One basic and primary element of every action ex delicto is proximate cause, and until this element is proven, it is impossible to invoke the doctrine of res ipsa loquitur. This is true, both as a matter of law and as a practical matter. The purpose of the doctrine of res ipsa loquitur is to supply the element of negligence in actions ex delicto and in no way supplies the element of proximate cause or causation. See Alabama Power Co. v. Berry, 254 Ala. 228, 48 So.2d 231. Therefore, until the plaintiff proves what act *caused* the injury, he could not possibly invoke the doctrine of res ipsa loquitur to supply the element of negligence so as to presume an act (which has not been proven) was negligent * * * Even if this Court, in an effort to extend the plaintiff every possible doubt, were to invoke the doctrine of res ipsa loquitur and say that the aircraft was operated negligently, then this Court would still be faced with the failure of the plaintiff to prove the element of causation, and this Court would have no evidence before it upon which to find that this negligence (created by res ipsa loquitur) was the proximate cause of the damage to the plaintiff's barn. Thus, regardless of how the evidence is viewed, this Court is still faced with the failure of the plaintiff to prove proximate cause and for this reason the plaintiff must fail * * *."

We note in conclusion that the situation at bar clearly is distinguishable from that found in the so-called "falling elevator" cases. In the latter, typically, we find that a plaintiff is injured when the elevator in which plaintiff is riding falls suddenly and unexpectedly. In such a case, the question of causation generally is eliminated, and the sole consideration relates to proof of negligence. In that circumstance, we recognize the peculiar availability of the res ipsa loquitur rule. It is an entirely

different matter, however, where, as here, the "falling elevator" does not of itself produce plaintiff's injury, but only creates the condition upon which plaintiff subsequently acts and suffers injury thereby. Given the latter fact situation, the plaintiff must assume the burden of proving that the proximate cause of the injury was defendant's allegedly negligent conduct. The plaintiff may not thrust this burden upon the shoulders of res ipsa loquitur. Simmons v. F. W. Woolworth Co., supra, and Cook v. United States, supra.

Plaintiffs, therefore, having failed to establish their right to invoke the doctrine of res ipsa loquitur, and also having failed to make out a prima facie case of actionable negligence against defendant, cannot prevail.

Judgment affirmed.

STRUCKMEYER, J., and ROBERT O. ROYLSTON, Superior Court Judge, concur.

Justice LEVI S. UDALL being disqualified, the Honorable ROBERT O. ROYLSTON, Judge of the Superior Court of Pima County, was called to sit in his stead.

BERNSTEIN, Justice, and PHELPS, Chief Justice (dissenting).

We cannot concur in the disposition of this case by the majority of the Court.

We note that appellee does not dispute that, in accordance with the standard established for common carriers and applied by the great weight of authority to the operation of elevators, it was bound to provide the highest degree of care for the safety of its elevator passengers. Appellant, relying on the doctrine of res ipsa loquitur, claims that appellee was negligent in operating the elevator so as to cause or permit it to slip below the floor level.

We have held that where

"the evidence shows absolute control by the defendant of the instrumentality causing the injury and the accident is such as in the ordinary course of events does not happen if those who have control use proper care, it is reasonable to presume, in the absence of an explanation by the defendant, that the accident occurred because of a lack of proper care." Pickwick Stages Corp. v. Messinger, 44 Ariz. 174, 180, 36 P.2d 168, 170.

See, also, Eisenbeiss v. Payne, 42 Ariz. 262, 25 P.2d 162; Tiller v. Von Pohle, 72 Ariz. 11, 230 P.2d 213.

The conditions necessary for the application of the doctrine of res ipsa loquitur were set forth in Capps v. American Airlines, 81 Ariz. 232, 234, 303 P.2d 717, 718:

"(1) the accident must be of a kind which ordinarily does not occur in the absence of some one's negligence;

"(2) it must be caused by an agency or instrumentality within the exclusive control of defendant;

"(3) it must not have been due to any voluntary action on the part of the plaintiff;

"(4) plaintiff must not be in a position to show the particular circumstances which caused the offending agency or instrumentality to operate to his injury."

Here, each of these conditions has been met: the slipping of an elevator two feet below floor level does not ordinarily occur in the absence of negligence; the elevator was within the exclusive control of appellee; no voluntary action on the part of appellant caused the elevator to slip; and appellant was in no position to show the particular circumstances which caused the elevator to slip. The doctrine of res ipsa loquitur has been applied to falling elevators (e. g.: Cobb v. Marshall Field & Co., 22 Ill.App.2d 143, 159 N.E.2d 520; Blackhawk Hotels Co. v. Bonfoey, 8 Cir., 227 F.2d 232, 56 A.L.R.2d 1047; Whylie v. Craig Hall, Inc., 1st Dept., 272 App.Div. 603, 74 N.Y.S.2d 128; Kunzie v. Leeds, Inc., 66 Ohio App. 469, 34 N.E.2d 448; Bartlett v. Pontiac Realty Co., 224 Mo.App. 1234, 31 S.W.2d 279; O'Connor v. Mennie, 169 Cal. 217, 146 P. 674; Cleary v. Cavanaugh, 219 Mass. 281, 106 N.E. 998; Griffen v. Manice, 166 N.Y. 188, 59 N.E. 925,

52 L.R.A. 922) and to elevators that lurch upwards (Clark v. Linwood Hotel, 365 Mo. 982, 291 S.W.2d 102), and we consider it likewise applicable to elevators that slip below floor level.

The effect of the application of the doctrine in this case is to permit the jury to infer that appellee's negligence caused the elevator to slip to a position two feet below the level of the floor. (See Pickwick Stages Corp. v. Messinger, supra, 44 Ariz. at page 186, 36 P.2d at page 173; Tiller v. Von Pohle, supra.) This is not to say, however, that appellee may not introduce contrary evidence or that he is not entitled to have the jury consider the separate question whether appellant's injuries were caused by her own contributory negligence in attempting to step out of the elevator. All we hold here is that the questions of negligence and contributory negligence should have been submitted to the jury.

There remains for discussion the question whether the trial court properly directed a verdict in favor of appellee on the ground that the slipping of the elevator was, as a matter of law, not the proximate cause of appellee's injuries. In appellee's view, Mrs. Nieman was not injured by appellee's negligence. The elevator having come to rest without injury to any passenger, appellee's negligence also came to rest and cannot be said to have been the proximate cause of Mrs. Nieman's injury; in the circumstances, logic carries the carrier's lia-

bility only so far as the carriage. Its common carrier duty thus neatly disposed of, appellee argues that its liability must be judged according to the tests developed and applied in controversies between occupiers of land and their licensees: the condition of the premises being obvious to Mrs. Nieman, appellee cannot be held responsible for what befell her.

We think that the logic of appellee's argument falls as obviously, and in the same degree, as its elevator fell on the evening of the accident.

First, as the rulings in many analogous bus and train cases suggest, the carrier's obligation extends to the providing of not only a safe means of transportation per se, but also a safe means of exit from the transporting vehicle, the standard governing the manner of movement also governing the manner of delivery at the point of destination. See, Greyhound Corp. v. Wilson, 5 Cir., 250 F.2d 509; Schaller v. Capital Transit Co., 99 U.S.App.D.C. 253, 239 F.2d 73; Yu v. New York, New Haven & Hartford R. Co., 145 Conn. 451, 144 A.2d 56; Goertz v. Chicago & North Western Ry. Co., 19 Ill.App.2d 261, 153 N.E. 2d 486; cf. Patton v. Minneapolis Street Ry. Co., 247 Minn. 368, 77 N.W.2d 433, 58 A.L.R.2d 921; Wells v. Flint Trolley Coach, Inc., 352 Mich. 35, 88 N.W.2d 285; King v. Vets Cab, Inc., 179 Kan. 379, 295 P.2d 605, 56 A.L.R.2d 1249; Parker v. City and County of San Francisco, 1st Dist., 158 Cal.App.2d 597, 323 P.2d 108; Beahan v. St. Louis Public Service Co., Mo.App., 213 S.W.2d 253; Coyne v. Pittsburgh Railways Co., 393 Pa. 326, 141 A.2d 830; Homa v. Wilkes-Barre Transit Corp., 394 Pa. 309, 147 A.2d 377; Pividal v. City of Miami, Fla.App., 105 So.2d 502. Indeed, as much has been held in cases where an accident occurred upon exit from an elevator which was stopped at a point not level with the building floor. Parker v. Manchester Hotel Co., 1st Dist., 29 Cal. App.2d 446, 85 P.2d 152; Jenkins v. Missouri State Life Ins. Co., 334 Mo. 941, 69 S.W.2d 666. No one would doubt that an airline which provides the most carefully planned and executed flight was yet negligent if it required its passengers to jump from the plane to the ground upon arrival. It seems to us the most palpable jury question whether the difference between that case and this one is of sufficient degree to warrant a different result.

But, second, resort need not be had in this case to any special standard of care applicable to common carriers alone. Whether the causal connection between the negligence which may be inferred and the injury which resulted is sufficient to form a chain as tight as that demanded by the abstract notion of "proximate cause" is, in the circumstances, a jury question from any conceivable point of view. The rationale of proximate cause as a legal doctrine, although often explained, is thus

elaborated by Judge Magruder, in Marshall v. Nugent, 1 Cir., 222 F.2d 604, 610–611, 58 A.L.R.2d 251:

"Back of the requirement that the defendant's culpable act must have been a proximate cause of the plaintiff's harm is no doubt the widespread conviction that it would be disproportionately burdensome to hold a culpable actor potentially liable for all the injurious consequences that may flow from his act, i. e., that would not have been inflicted 'but for' the occurrence of the act. This is especially so where the injurious consequence was the result of negligence merely. And so, speaking in general terms, the effort of the courts has been, in the development of this doctrine of proximate causation, to confine the liability of a negligent actor to those harmful consequences which result from the operation of the risk, or of a risk, the foreseeability of which rendered the defendant's conduct negligent.

"Of course, putting the inquiry in these terms does not furnish a formula which automatically decides each of an infinite variety of cases. Flexibility is still preserved by the further need of defining the risk, or risks, either narrowly, or more broadly, as seems appropriate and just in the special type of case.

\*     \*     \*     \*     \*     \*

"When an issue of proximate cause arises in a borderline case, as not infrequently happens, we leave it to the jury with appropriate instructions. We do this because it is deemed wise to obtain the judgment of the jury, reflecting as it does the earthy viewpoint of the common man—the prevalent sense of the community—as to whether the causal relation between the negligent act and the plaintiff's harm which in fact was a consequence of the tortious act is sufficiently close to make it just and expedient to hold the defendant answerable in damages. That is what the courts have in mind when they say the question of proximate causation is one of fact for the jury. [citing cases] It is similar to the issue of negligence, which is left to the jury as an issue of fact. Even where on the evidence the facts are undisputed, if fair-minded men might honestly and reasonably draw contrary inferences as to whether the facts do or do not establish negligence, the court leaves such issue to the determination of the jury, who are required to decide, as a matter of common-sense judgment, whether the defendant's course of conduct subjected others to a reasonable or unreasonable risk, i. e., whether

under all the circumstances the defendant ought to be recognized as privileged to do the act in question or to pursue his course of conduct with immunity from liability for harm to others which might result."

See also Parker v. City and County of San Francisco, supra. (For a recent account of the history of the doctrine, see Pound, Causation, 67 Yale L.J. 1.)

In this case, it is true that defendant was fortunate in passing the risk of shock injuries which might ensue from a falling elevator out of control. But that was not the only foreseeable risk which defendant's negligence set in motion. Indeed, as it happened, when the elevator stuck at a point where exit required a difficult step up and the opening required persons of normal height to duck at the same time, the risk that a head would be bumped was an obvious one. Plainly, then, the risk was not so remote that reasonable men could not differ in deciding the question.

Nor is it a sufficient counter argument to contend that defendant was fulfilling its responsibility when its employee went for help and that Mrs. Nieman's injury was due to her impatient movement before help had arrived. In the first place, defendant has not yet shown as a matter of record that it was in the process of affording prompt and adequate help; and there is a conflict in the evidence concerning what, if anything, the elevator operator said in that regard, from which it may be concluded, at least, that the operator failed to make her word of assurance sound very clearly or convincingly. Such disputed facts require submission of the case to a jury. For if a jury should decide that all the elevator operator did was to issue an invitation to exit without assistance, that alone would fuse a causal connection between defendant's negligence and the injury which resulted, well within the ambit of "proximate cause." Secondly, even if the disputed facts were resolved in defendant's favor, still we do not believe that defendant's liability would be settled as a matter of law. Keeping in mind the elevator operator's earlier invitation to "step up", we think it open for a jury to say that one of the foreseeable risks in the circumstances was that the passengers would attempt to make their own exit despite the danger. Indeed, it is not too much to say that entrapment invites impatience and self-help, even when some danger is involved. Cf. Marshall v. Nugent, supra; National Life Ins. Co., etc. v. McKenna, 8 Cir., 226 F. 165; Zucker v. Ephraim Realty Corp., 2d Dept., 243 App. Div. 543, 275 N.Y.S. 593. Thirdly, as the above analysis suggests, the principal thrust of defendant's argument is no more than an assertion that Mrs. Nieman was contributorily negligent as a matter of law, an argument which our constitution ex-

plicitly directs should be addressed to the jury alone. See Michie v. Calhoun Bros. Livestock Transportation Co., 85 Ariz. 270, 273–274, 336 P.2d 370, and the cases cited therein.

We take this occasion again to repeat what was only recently said in Figueroa v. Majors, 85 Ariz. 345, 346–347, 338 P.2d 803, 804:

> "It is * * * fundamental that a verdict will not be directed where the evidence on material facts is conflicting, or where on undisputed facts reasonable and fairminded men may differ as to the inferences and conclusions to be drawn, or where different conclusions might reasonably be reached by different minds, and thus the question of negligence and proximate cause is one of fact to be submitted to the jury and not a question of law for the court; if, upon all the facts and circumstances, there is a reasonable chance or likelihood of the conclusions of reasonable men differing, then the question is one for the jury."

We do not believe the result would be different even if we accepted appellee's contention that the ordinarily applicable law should be ignored and the case considered solely in terms of defendant's liability as an occupier of land and premises. The dangerous condition of the premises which Mrs. Nieman encountered was not one which was "obvious" to her when she entered defendant's elevator. On the contrary, it could be said that defendant's operation of the elevator led her to rely on defendant for safe passage to the ground floor and served to entrap her into a setting of danger which she could not avoid. Once she was trapped, of course, her knowledge of the danger may have been, and apparently was, a futile safeguard of her well-being. Even the law applied to controversies between occupiers of premises and their licensees—which, it may be noted, is constantly developing to take account of modern business realities—, would not preclude recovery in such circumstances. Cf. Swift & Co. v. Schuster, 10 Cir., 192 F.2d 615; Seelbach, Inc. v. Mellman, 293 Ky. 790, 170 S.W.2d 18, 19; James, Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees, 63 Yale L.J. 605; Keeton, Personal Injuries Resulting From Open and Obvious Conditions, 100 U. of Pa.L.R. 629.

The judgment should be reversed and a new trial granted.